DIXON, Judge.
This is an appeal from a judgment condemning defendant, John G. Stuart, to vacate certain property leased to him in Red River Parish by the plaintiff, Ben L. Thomas, Jr. The judgment also rejected the demands of Stuart (plaintiff in recon-vention) for costs of clearing certain other property of plaintiff and preparing the land in question for the crop to be planted.
Thomas instituted this suit on January 24, 1969. It alleged that Stuart was in possession of certain land, owned by plaintiff, under a verbal lease agreed to by the parties many years before; that plaintiff had notified Stuart, in writing, on November 26, 1968, that the verbal lease would be terminated and cancelled, effective the last *616 day of the yearly term then running, viz. December 31, 1968. Since Stuart had failed to vacate the property, the plaintiff prayed that a rule issue condemning him to vacate and deliver the property.
Stuart’s answer alleged that the “yearly basis” referred to was a “crop year” and not a “calendar year;” that the custom in the area was that such agreements were based on a crop year; that he gathered his crops in late September and early October, 1968; and that during October he began breaking the land and preparing for the next year’s crop. The reconventional demand prayed that, if the Court should find his right to occupy the land terminated, Thomas was indebted to him for $550.00, the cost of clearing and preparing the land for the next crop.
The principal issue seems to be this: was the original lease based on a “calendar year” or on a “crop year?” If it was based on a “crop year” the defendant contends that there was a tacit reconduction of the lease under LSA, Civil Code Article 2688. This contention is founded on the fact that defendant began preparing for his next crop in early October and plaintiff’s notice was not received by him until November 27, 1968, more than a month after the end of the lease.
The testimony shows that the defendant took possession of the land in late 1950 or early 1951. Plaintiff said it was 1951 and defendant said it was September or October of 1950. Plaintiff testified, quite definitely, that at the time the agreement was reached he explained to defendant that the lease would terminate December 31, 1951 because, as plaintiff stated it, “When I rent it to you, I want you to know that December 31 I might want it because I might want to farm it myself.” (Tr., p. 48). At another point plaintiff stated that he told defendant that the lease was from January to December because the next year he might “want to sell it or get rid of it.” (Tr., p. 38). Defendant testified that he planted cotton and' soybeans on the land in some years; that he cut hay off the land over the years; and that in some years he didn’t put the land into production. It was also proven and uncontra-dicted that rental payments of $600.00 were made by defendant in January of each year since 1951, with the exception of a payment made in late December, 1966 and deposited by Thomas on December 29, 1966.
We agree with the trial judge’s opinion that the original lease was for the “calendar year” of 1951. Plaintiff’s positive testimony and the fact that cash rental payments were made in January of each year of the lease (with the exception of the payment in December, 1966), which had run for seventeen years, and not after the cutting and sale of any crop that might have been produced, lead us to this conclusion. The trial judge accurately pointed out that in some years the defendant planted nothing and that in other years he varied his crop. This would produce, in different years, a different time for the harvesting of the crop and force the plaintiff to continually watch the land if he wanted to end the lease and give proper notice to avoid a reconduction. We find, therefore, no reconduction of the lease and the suit brought by plaintiff in January was filed in time to avoid the consequences of LSA Civil Code Article 2688.
Defendant’s alternative contention is that plaintiff is estopped to evict him because he was led to believe that the lease would be continued for another year. A similar contention was raised in Cramer v. Habetz, La.App., 189 So.2d 278 (1966) and the Court stated:
“Defendant’s alternate contention is that plaintiff should be equitably estopped from evicting him. In order for a landowner to be equitably estopped from evicting a tenant, said landlord must by word or conduct cause the land tenant to believe that he will be given a new lease, and due to this belief, said tenant acts in such a way that causes him expense and detriment. See Federal Land Bank of New Orleans v. Sanders, La.App. 1 Cir., 167 So. 140.”
*617 We cannot say that the discussions between the parties, with regard to clearing and additional twenty acres, were intended to nor did they lead defendant to believe that the lease would be renewed. Silence on plaintiff’s part, during September and October, could not produce that effect.
We think the evidence supports the conclusion reached by the trial court, and we thus affirm the judgment rendered by that Court.
For the reasons herein assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to appellant.